# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JOHN WILLIAMS, #348-025 | * | |
| Plaintiff | * | |
| v | * | Civil Action No. GLR-13-647 |
| K. STEWART, *Hearing Officer,* et al. | * | |
| Defendants | * | |

\*\*\*

## MEMORANDUM OPINION

Plaintiff John Williams ("Williams") filed the above-captioned Complaint pursuant to 42 U.S.C. § 1983.  Defendants Warden John Wolfe and Secretary of the Department of Public Safety and Correctional Services Gary D. Maynard, by their attorney, have filed a Motion to Dismiss, or in the Alternative for Summary Judgment.[1]  ECF No. 16.  Plaintiff has responded.  ECF No. 20.   After review of the pleadings and applicable law, the Court determines that a hearing is unwarranted.  See Local Rule 105.6 (D. Md. 2011).  For the reasons that follow, the Motion to Dismiss, construed as a Motion for Summary Judgment, will be granted.

## Background

Williams, an inmate confined at the Jessup Correctional Institution, alleges that on March 11, 2012, he was placed on segregation pending an adjustment hearing for an alleged assault.  Williams was provided notice of inmate rule violation stating that Officer Adeolo observed him

---

[1] Hearing Officer K. Stewart has not been properly served with the Complaint.  For the reasons that follow, even if the Hearing Officer had been served, the Complaint against him would be subject to dismissal.

1

assault another inmate after reviewing institutional surveillance recordings. Williams alleges he requested, but was denied, representation, witnesses, and other unspecified evidence at the adjustment hearing, which deprived him of his right to due process in accordance with Bundy v. Cannon, 538 F.Supp. 410 (D.Md. 1982). ECF No. 1.

On April 2, 2012, Williams was called for his adjustment hearing. He alleges he was forced to proceed without his representative because the representative had been delayed. Williams alleges the only evidence presented was a video tape, but he was prevented from viewing the video. Williams contends he refused to answer questions about his presence at the scene because he was prohibited from viewing the video and there could be no evidence of an assault on the video because no assault occurred. Additionally, the victim testified he was not assaulted and no medical evidence was produced corroborating an assault. Ultimately, Williams was found guilty of the assault and his appeal of the adjustment decision was denied. Id.

As a result, Williams was sentenced to 250 days of segregation time, loss of 250 good conduct credits, 60 days loss of visits, 250 days loss of phone privileges, and 250 days loss of commissary privilege. Additionally, he indicates he lost his job assignment where he was earning $1.25 per day and credit against his sentence. Id. Williams, however, alleges he was deprived due process because he was denied representation, the hearing was not held within 96 hours, his refusal to testify was improperly held against him, and the hearing was not fair and impartial. Id.

The uncontroverted record demonstrates that on March 12, 2012, Williams was served with a notice of inmate rule infractions for violating rule #102 (assault or battery on another inmate) after a video was reviewed which showed him assaulting another inmate in the shower

2

area. Id., Ex. 2, p. 1.  At the time of the adjustment hearing Williams's representative was unavailable, but Williams declined to postpone the matter and elected to proceed without representation.[2]  Id., Ex. 2, p. 2.

Hearing Officer Stewart reviewed the video and noted that the victim, inmate Hale, could be seen showering as Williams stood outside of the shower. Id. Ex. 2, p. 3.  Stewart further noted that the video showed Williams jumping quickly into the shower area and punching Hale, who was then seen falling out of the shower.  Id.  During the hearing, Stewart asked Williams if he had been standing outside the shower, but Williams was evasive in his response to her questioning.  Id.  Hale was called to testify by Williams.  During his testimony, Hale denied being assaulted and claimed he merely slipped and fell.  Id., Ex. 2, p. 3-4.

In summarizing the evidence, in addition to noting what she observed on the video, Stewart noted several inconsistencies in Williams's testimony.  Specifically, Williams testified that he was wearing all of his clothes at the time of the alleged assault and alternatively that he had been showering for a long time.  Id., Ex. 2, p. 4.  Stewart found Williams's testimony untruthful and determined the state presented sufficient proof that Williams assaulted Hale.  Id.

**Standard of Review**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must set forth "a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Twombly, 555 U.S. at 556.  In considering a

---

[2] Plaintiff's designated representative avers that he was in the facility on the date of the hearing and available to represent Plaintiff but was not called for the hearing.  ECF No. 20.

Rule 12(b)(6) motion, the Court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).

> [A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

Estelle v. Gamble, 429 U.S. 97, 106 (1976) (quoting Haines v. Kerner, 404 U.S. 519, 520-21 (1972)) (internal quotation marks omitted).

"When matters outside the pleading are presented to and not excluded by the court, the 12(b)(6) motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 260-61 (4th Cir. 1998) (quoting Fed.R.Civ.P. 12(b)) (internal quotation marks omitted). Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a).

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970)). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48 (alteration in the original).

A "material fact" is one that might affect the outcome of a party's case. Id. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265.

Here, because the Court will consider matters outside of the pleading, Defendants' Motion will be construed as a Motion for Summary Judgment.

**Analysis**

First, Williams's Complaint against Wolfe and Maynard is based solely upon the doctrine of respondeat superior, which does not apply in § 1983 claims. See Love-Lane v. Martin, 355 F.3d 766, 782 (4th Cir. 2004) ("no respondeat superior liability under § 1983"). Supervisory officials may be held liable, however, in circumstances in which "indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Baynard v. Malone, 268 F.3d 228, 235 (4th Cir. 2001) (quoting Slakan v. Porter, 737 F.2d 368, 372 (4th Cir.1984)) (internal quotation marks omitted). Supervisory liability must be supported with evidence that:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices [ ]; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Id. (alteration in the original) (quoting Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir.1994)). Williams has pointed to no action or inaction on the part of Maynard or Wolfe that resulted in a constitutional injury, and accordingly, his claims against them will be dismissed.

Next, even if Williams had properly served Hearing Officer K. Stewart with the Complaint, his claim against Stewart would be subject to dismissal. In prison disciplinary proceedings that bring the possible loss of good conduct credits, a prisoner is entitled to certain due-process protections. See Wolff v. McDonnell, 418 U.S. 539, 563 (1974). These include advance written notice of the charges against him, a hearing, the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision. Id. at 564-571. Substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455 (1985).

Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. See Kelly v. Cooper, 502 F.Supp. 1371, 1376 (E.D.Va. 1980). The findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious. See Hill, 472 U.S. at 456; see also Baker v. Lyles, 904 F.2d 925, 933 (4th Cir. 1990). As long as there is some evidence in the record to support a disciplinary committee's factual findings, a federal court will not review their accuracy.

Here, Williams received all the process he was due. He was given timely advance written notice of the infraction, was permitted to attend the disciplinary hearing and to call witnesses on his own behalf, and received the written findings of the hearing officer. Moreover, the hearing officer's determination of guilt was based upon some evidence, i.e. review of the video tape, review of the notice of inmate rule infraction prepared under oath by the correctional officer, consideration of the witnesses' testimony, and observation of the witnesses' credibility.

The credibility determinations made by the hearing officer in conjunction with the notice of inmate rule infraction prepared under the penalties of perjury constitutes "some evidence" to support Williams's adjustment conviction.[3]  Nothing more was constitutionally required.

Further, Williams was not entitled to counsel during his disciplinary hearing.  <u>Baxter v. Palmigiano</u>, 425 U.S. 308, 315 (1976).  Nevertheless, Williams's contention that he was denied representation is belied by the record, which demonstrates that he waived representation, deciding to proceed without his representative rather than postpone the hearing. That Williams's designated representative indicates he was ready, willing, and able to assist Williams on the date of the hearing is of no moment.  Williams does nothing to refute Defendants' contention that he waived representation.  Moreover, in prison disciplinary proceedings, an inmate's refusal to testify may support an inference against him.  <u>Id.</u> at 320.  Williams admits he refused to answer questions regarding his whereabouts during the incident.  Thus, the Hearing Officer properly considered Williams evasive and inconsistent answers in assessing his credibility.

Next, the Court finds the restrictions placed on Williams's visits did not violate his constitutional rights.  <u>See</u> <u>Overton v. Bazzetta</u>, 539 U.S. 126, 133-134 (2003).[4]   Curtailment of

---

[3] The Administrative Law Judge at the Inmate Grievance Office, in dismissing Plaintiff's appeal, also reviewed the video tape of the incident and noted that it was "clear from the video that [Williams] and another inmate were waiting for a period of time outside of the shower, where inmate Hale was showering.  As Mr. Hale was drying off, the two inmates entered the shower and a struggle ensued.  Mr. Hale fell out of the shower into the hallway and reentered it.  Officers were quickly called and the inmates were separated and restrained."  ECF No. 15, Ex. 3, p. 7.

[4] In <u>Overton</u>, the United States Supreme Court held that a prison policy that "uses withdrawal of visitation privileges for a limited period as a regular means of effecting prison discipline" does not result in cruel and unusual punishment. <u>Overton</u>, 539 U.S. at 136–37 (2003) (finding a two-year deprivation of visitation privileges did not violate the Eighth Amendment).  The Supreme Court explained as follows:

> This is not a dramatic departure from accepted standards for conditions of confinement.  Nor does the regulation create inhumane prison conditions, deprive

visitation, recreation, and property privileges, which emphasizes the connection between an inmate's "choices and consequences," is rationally related to providing a safer prison environment. Id. at 133. Williams's visitation was not permanently suspended. The events which led to the suspension of visitation are well documented as is Williams's disciplinary history. The loss of visits pending adjustment was not constitutionally violative as the withdrawal of visitation privileges is a proper and "even necessary management technique to induce compliance with the rules of inmate behavior, especially for high-security prisoners who have few other privileges to lose." Id. at 134. Although the suspension of Williams's visitation was restrictive, it was of brief duration. Thus, his allegations do not present a claim of constitutional magnitude for which relief can be granted.

Finally, Williams's claim that he did not receive a disciplinary hearing within the time agreed upon in Bundy is unavailing. As outlined above, Williams's disciplinary proceedings comported in all respects with the requirements of due process. To the extent that written directives were not followed to the letter, the adoption of procedural guidelines does not give rise to a liberty interest; thus, the failure to follow regulations does not, in and of itself, result in a violation of due process. See Culbert v. Young, 834 F.2d 624, 628 (7th Cir. 1987).[5] Thus, Williams's allegations that state law and/or regulations were violated during his disciplinary

---

    inmates of basic necessities, or fail to protect their health or safety. Nor does it involve the infliction of pain or injury, or deliberate indifference to the risk that it might occur. If the withdrawal of all visitation privileges were permanent or for a much longer period, or if it were applied in an arbitrary manner to a particular inmate, the case would present different consideration.

Id. at 137 (citations omitted).

[5] Regardless of any alleged violations of internal regulations, the law is settled that the failure to follow a prison directive or regulation does not give rise to a federal claim, if constitutional minima are met. See Myers v. Kelvenhagen, 97 F.3d 91, 94 (5th Cir. 1996).

hearing fail to state a due process claim.

## Conclusion

For the aforementioned reasons, Defendants' Motion, construed as a Motion for Summary Judgment, shall be granted.[6]  Plaintiff's Complaint against Hearing Officer K. Stewart is dismissed without prejudice.  A separate Order follows.

July 8, 2014                                                                              /s/
                                                                    _____
                                                                    George L. Russell, III
                                                                    United States District Judge

---

[6] Having found no constitutional violation, the Court need not address Defendants' claim of qualified immunity.